JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**
COLONIAL MEDICAL GROUP, INC.,
a California corporation

**DEFENDANTS** CATHOLIC HEALTHCARE WEST dba MERCY HOSPITAL; GOLDEN EMPIRE MANAGEMENT CARE, A MEDICAL GROUP, INC. and MANAGED CARE SYSTEMS, LP

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)
Kern County, California

County of Residence of First Listed Defendant San Francisco, California
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [X] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities — | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities — | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§ 1, 2; BUS. & PROF. §§16720 et seq.;CA BUS. & PROF.§§ 650.01-.02
Brief description of cause:
Sherman Act/Cartwright Act claims based on exclusive dealing contracts.

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY**
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE May 18, 2009

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be marked. (See Section III below; federal question actions take precedence over diversity cases.)

III.      **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.      **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.      **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                  Brief Description: Unauthorized reception of cable service

VII.      **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.      **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

ORIGINAL

AO 440 (Rev. 01/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

COLONIAL MEDICAL GROUP, INC.,
a California corporation,

Plaintiff

v.

CATHOLIC HEALTHCARE WEST, a California Not-
For-Profit Corporation, dba MERCY HOSPITAL;
GOLDEN EMPIRE MANAGEMENT CARE, A MEDICAL GROUP,
INC., a California Corporation; and MANAGED CARE
SYSTEMS, LP,

Defendant

)
)
)
)
)
)
)
)
)
)
)

CV 09 2192

Civil Action No.

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

See above defendants

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

LAWRENCE SILVER
SILVER & FIELD
10975 Santa Monica Boulevard
Los Angeles, California 90025

MAXWELL M. BLECHER
BLECHER & COLLINS, P.C.
515 South Figueroa Street
Suite 1750
Los Angeles, California 90071

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT
Richard W. Wieking

Date: MAY 19 2009

Signature of Clerk of Court or Deputy Clerk

ANNA SPRINKLES

AO 440 (Rev. 01/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                          *Server's signature*

                                                     _____
                                                          *Printed name and title*

                                                     _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

1    SILVER & FIELD
     Lawrence Silver (State Bar No. 68604)
2    10975 Santa Monica Boulevard
     Los Angeles, California 90025
3    E-mail: Lsilver@Silver-Field.com
     Telephone: (310) 477-7640
4    Facsimile: (310) 477-6460

5    BLECHER & COLLINS, P.C.
     Maxwell M. Blecher (State Bar No. 26202)
6     Mblecher@blechercollins.com
     515 South Figueroa Street, Suite 1750
7    Los Angeles, California 90071-3334
     Telephone: (213) 622-4222
8    Facsimile: (213) 622-1656

9
     Attorneys for Plaintiff
10   COLONIAL MEDICAL GROUP, INC.

11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15   COLONIAL MEDICAL GROUP, INC., a    )   CASE NO.
     California corporation,            )
16                                      )
                  Plaintiff,            )   CERTIFICATION OF INTERESTED
17                                      )   ENTITIES OR PERSONS FOR PLAINTIFF
          vs.                           )   COLONIAL MEDICAL GROUP, INC.
18                                      )
     CATHOLIC HEALTHCARE WEST, a        )
19   California Not-For-Profit Corporation, dba )
     MERCY HOSPITAL; GOLDEN EMPIRE      )
20   MANAGEMENT CARE, A MEDICAL         )
     GROUP, INC., a California Corporation ; )
21   and MANAGED CARE SYSTEMS, LP,      )
                                        )
22                Defendants.           )
                                        )
23   _____   )

24          Pursuant to Civil L.R. 3-16, the undersigned certifies that the following

25   listed persons, associations or persons, firms, partnerships, corporations (including

26   parent corporations) or other entities (i) have a financial interest in the subject matter in

27   controversy or in a party to the proceeding, or (ii) have a non-financial interest in that

28   CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

subject matter or in a party that could be substantially affected by the outcome of this proceeding:

THE CENTENNIAL GROUP

Dated:   May 18, 2009

SILVER & FIELD
LAWRENCE SILVER

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER

By _____
MAXWELL M. BLECHER
Attorneys for Plaintiff COLONIAL MEDICAL
GROUP, INC.

CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1   SILVER & FIELD
2   LAWRENCE SILVER (SBN 68604)
    10975 Santa Monica Boulevard
3   Los Angeles, CA 90025
    E-Mail Lsilver@Silver-Field.com
4   Telephone (310) 477-7640
    Facsimile (310) 477-6460
5              and
    BLECHER & COLLINS, P.C.
6   MAXWELL M. BLECHER (SBN 26202)
    RALPH C. HOFER (SBN 86083)
7   515 South Figueroa Street, Suite 1750
    Los Angeles, California 90071-3334
8   Telephone: (213) 622-4222
    Facsimile: (213) 622-1656

9   Attorneys for Plaintiff COLONIAL MEDICAL GROUP, INC.

10             UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13   COLONIAL MEDICAL GROUP, INC.        CASE NO.        2192
     a California corporation,
14                                       COMPLAINT FOR DAMAGES
                    Plaintiff,           AND INJUNCTIVE RELIEF
15                                       ANTITRUST, UNFAIR
            v.                           COMPETITION, TORTIOUS
16                                       INTERFERENCE, BREACH OF
     CATHOLIC HEALTHCARE WEST, a         CONTRACT, BREACH OF
17   California Not-For-Profit Corporation, COVENANT OF GOOD FAITH
     dba MERCY HOSPITAL; GOLDEN          AND FAIR DEALING
18   EMPIRE MANAGEMENT CARE, A
     MEDICAL GROUP, INC., a California    (DEMAND FOR JURY TRIAL)
19   Corporation; and MANAGED CARE
     SYSTEMS, LP,
20
                    Defendants.
21

22

23        Plaintiff for its Complaint, and demanding trial by jury, complains and

24   alleges as follows:

25

26

27

28

SILVER & FIELD
 477-7640

                                  1                              COMPLAINT

## I.

## JURISDICTION AND VENUE

1.     Plaintiff files this Complaint and institutes these proceedings against the defendants under Sections 4 and 16 of the Clayton Act (15 U.S.C. § 15 and § 26) to secure damages from, and injunctive relief against, the defendants for violations of Sections 1 and 2 of the Sherman Act.  (15 U.S.C. §§ 1, 2.)  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1337.

2.     Defendant Catholic Healthcare West maintains its principal office, and each defendant transacts bushiness, and may be found within the Northern District of California.  The interstate trade and commerce involved and affected by the alleged violation of the antitrust laws was carried on in part within this district and some of the unlawful acts described herein were conceived, performed or made effective within this district.

3.     This Court further has jurisdiction over the supplemental and California state law claims asserted herein pursuant to 28 U.S.C. §1367.

## II.

## THE PARTIES

4.     Plaintiff COLONIAL MEDICAL GROUP, INC. ("Plaintiff" or "COLONIAL") is a California corporation organized and existing under the laws of the State of California and is engaged in the business of providing medical services to individuals.  At all times mentioned herein, COLONIAL was, and is, current in its registration with the Department of Corporations.  COLONIAL'S principal place of business is in Bakersfield, California.

5.     COLONIAL is a medical practice group which contracts with physicians, who are internists and other speciality physicians on staff at MERCY HOSPITAL.  COLONIAL'S doctors have provided excellent services to MERCY HOSPITAL in the treatment of inmates admitted to the HOSPITAL for many years

SILVER & FIELD
310) 477-7640

2

COMPLAINT

1    with no complaints from MERCY HOSPITAL or the State of California

2    Department of Corrections and Rehabilitation ("CDCR") medical officials.

3    COLONIAL has assembled and contracted with a group of doctors skilled at

4    providing, and willing to provide, medical services and treatment to inmates.

5        6.    Defendant CATHOLIC HEALTHCARE WEST, a California Not-

6    For-Profit corporation, dba MERCY HOSPITAL ("MERCY HOSPITAL") was

7    organized and exists under the laws of the State of California which owns and

8    operates a hospital and appurtenant facilities located at 2215 Truxtun Avenue,

9    Bakersfield, California and is known as MERCY HOSPITAL.  MERCY

10   HOSPITAL has a contract with CDCR to provide hospital services to CDCR's

11   inmates.  Defendant CATHOLIC HEALTHCARE WEST has its principal offices

12   and conducts business in the City and County of San Francisco, as well as the City

13   of Bakersfield and County of Kern.  CATHOLIC HEALTHCARE WEST also

14   owns and operates another sister hospital in Bakersfield, Memorial Hospital,

15   which has a specialty heart care and treatment facility.  Memorial Hospital does

16   not have a contract with CDCR.

17       7.    Defendant GOLDEN EMPIRE MANAGEMENT CARE, A

18   MEDICAL GROUP, INC. ("GEMCARE") is a corporation organized and existing

19   under the laws of the State of California.  GEMCARE's principal place of

20   business is in Bakersfield, California.  Defendant GEMCARE is engaged in the

21   business of providing medical services to individuals.  Plaintiff COLONIAL and

22   Defendant GEMCARE are competitors.  Defendant GEMCARE conducts business

23   in the City and County of San Francisco and the City of Bakersfield and County of

24   Kern.

25       8.    Defendant MANAGED CARE SYSTEMS, LP ("MANAGED

26   CARE") is a business organization created pursuant to the laws of the State of

27   California and conducts the business affairs of defendant GEMCARE.  Defendant

28

Managed Care conducts business in the City and County of San Francisco and the City of Bakersfield and County of Kern.

## III.

## BACKGROUND FACTS

9.     COLONIAL, pursuant to a non-exclusive contract with the CDCR, is in the business of providing medical services to individuals who are inmates in California state prisons in Central California, in which there are 9 state prisons. At the time that COLONIAL entered into the contract with CDCR, only MERCY HOSPITAL was contracted with CDCR, and it was understood that MERCY HOSPITAL was the only hospital that COLONIAL would use for CDCR inmates. In the latest proposed contract between the parties, CDCR has requested a term that COLONIAL admit CDCR inmate patients only to MERCY HOSPITAL. MERCY HOSPITAL has a 29 bed guarded unit and other guarded facilities, which other hospitals in the area do not.  CDCR has a significant cost savings when its inmates are cared for and treated at MERCY HOSPITAL in large part as it has guarded units specifically designed to accommodate, less expensively, the security needs of CDCR's inmate population.

10.     The procedure for the referral of inmate patients to COLONIAL for medical care and treatment follows a common and customary path.  Upon a determination that an inmate is in need of healthcare services provided by a hospital, CDCR health officials, knowing that COLONIAL has a physician on call 24/7, contacts the on call physician at Plaintiff COLONIAL and advises that they have been selected to provide healthcare services to a named, ill or injured inmate. The CDCR official discusses the illness or injury and advises that a security transport has been arranged to take the inmate to Defendant MERCY HOSPITAL, with which CDCR has a hospital services contract.  The COLONIAL on call physician then contacts the Emergency Room at Defendant MERCY HOSPITAL

1    and advises the Emergency Room personnel of the anticipated arrival of

2    COLONIAL's inmate patient and that COLONIAL is providing physician

3    healthcare services to the patient.  COLONIAL requests the Emergency Room

4    physician to contact the assigned COLONIAL physician with reports of the

5    inmate's condition and when a determination is made to discharge or admit the

6    inmate as a patient to become an inpatient at Defendant MERCY HOSPITAL.  If

7    the Emergency Room physician is of the opinion that the medical needs of the

8    patient requires admission, then the patient's physician appointed by Plaintiff

9    COLONIAL causes the patient to be admitted to the hospital and thereafter is fully

10   in charge of the care and treatment of the patient, for which under COLONIAL-

11   CDCR contract, COLONIAL is compensated for the services rendered pursuant to

12   a negotiated rate for the services performed.

13       11.    Defendant MERCY HOSPITAL contracts with Central California

14   Emergency Medicine Physicians, Inc. to exclusively provide Emergency Room

15   services.  Pursuant to this contract, all patients seeking emergency medical care at

16   Defendant MERCY HOSPITAL must first be seen by an Emergency Room

17   physician who is associated with the Central California Emergency Medicine

18   Physicians, Inc.

19       12.    Defendant MERCY HOSPITAL has had an "ON CALL" protocol in

20   place prior to May 1, 2009.  Should any patient advise that he or she is under the

21   care of a physician who is a member of the Medical Staff of Defendant MERCY

22   HOSPITAL, under the protocol, no reference is made to the "ON CALL" list.

23       13.    If a patient advised the Emergency Room personnel that they are not

24   under the care of any physician who is on staff at Defendant MERCY HOSPITAL,

25   under the protocol, then and only then is reference made to the "ON CALL" list

26   and the next available physician who practices in the area of medical services

27   needed by the patient is called by Emergency Room personnel and advised of the

28   medical issues involving his/her new patient.  Once the "ON CALL" physician

accepts the patient, that physician becomes that patient's attending physician for
the admission to Defendant MERCY HOSPITAL for inpatient medical services
and is in charge of that patient's medical care.

14.    CDCR, the inmate's custodian, is legally authorized to select the
physician or medical group to provide medical services to any inmate committed
to its custody.  CDCR, having selected COLONIAL, no reference to any other
"ON CALL" protocol at Defendant MERCY HOSPITAL is appropriate.

15.    On information and belief, Plaintiff COLONIAL alleges that prior to
May 1, 2009, Defendant GEMCARE entered into a non-exclusive contract with
CDCR to provide physician health services to inmates held by CDCR.

16.    The Medical Staff at MERCY HOSPITAL is a separate legal entity
pursuant to the laws of the State of California, Business and Professions Code
§2282.50.  The Medical Staff of MERCY HOSPITAL is organized and is
controlled by a Medical Executive Committee.  The Medical Staff establishes and
controls the "ON CALL" protocol at Defendant MERCY HOSPITAL, subject to
the asserted control of the "ON CALL" protocol by the Board of Directors of
Defendant MERCY HOSPITAL.

17.    On information and belief, Plaintiff COLONIAL alleges that on or
about April 20, 2006, Russell V. Judd ("Judd"), President, CEO, and
Administrator of Defendant MERCY HOSPITAL, met with the Executive
Committee of Medical Staff.  Judd requested on behalf of Defendant MERCY
HOSPITAL and Defendant GEMCARE a modification of the "ON CALL"
protocol as applies to CDCR patients.  The proposal was that only physicians
associated with or contracted with GEMCARE may admit an inmate upon an
Emergency Room determination that the inmate should be admitted as a patient for
inpatient care and treatment to Defendant MERCY HOSPITAL.  As a result of this
proposal, the "ON CALL" protocol of Defendant MERCY HOSPITAL would be
changed so that regardless of who CDCR selected as an inmate's physician

1   Emergency Room personnel, applying the proposed ON CALL protocol, would

2   only contact physicians associated with GEMCARE for purposes of admitting a

3   CDCR patient to the hospital.  The proposal was to establish an exclusive dealing

4   arrangement with regard to the medical care of inpatient inmates at Defendant

5   MERCY HOSPITAL to the exclusion of COLONIAL and any other potential

6   providers.

7        18.    The Medical Executive Committee of the Medical Staff at Defendant

8   MERCY HOSPITAL rejected the request made by Judd to modify the "ON

9   CALL" protocol at Defendant MERCY HOSPITAL.

10        19.    Adverse to and inconsistent with the determination of the Executive

11   Committee of the Medical Staff, Judd and the Board of Directors of Defendant

12   MERCY HOSPITAL thereafter, in violation of the property interest held by

13   physicians associated with COLONIAL and COLONIAL, and in derogation and

14   disregard of the COLONIAL-CDCR contract, unilaterally modified the "ON

15   CALL" protocol as proposed by Judd and rejected by the Executive Committee of

16   the Medical Staff.

17        20.    On April 28, 2009, Judd wrote to all physicians on staff at Defendant

18   MERCY HOSPITAL advising that Defendant MERCY HOSPITAL and

19   Defendant GEMCARE had entered into an actual or de facto exclusive dealing

20   arrangement with regard to the medical care of inpatient and outpatient inmates at

21   Defendant MERCY HOSPITAL.  Emergency Room personnel were to call

22   Defendant GEMCARE physicians to provide care for inmates to the exclusion of

23   COLONIAL physicians.  Judd's letter, attached as Exhibit "A", reads, in part:

24        "As a result of these changes at CDCR, the Mercy Hospital Board, in

25        consultation with the Medical Executive Committee, has approved

26        Mercy Hospital entering into an exclusive Coverage Services

27        Agreement with Golden Empire Managed Care, Inc., A Medical

28        Group to ensure adequate coverage of the Emergency Departments

1    and continuous availability of inpatient services for CPHC's patients.

2    Under this arrangement, Golden Empire will provide exclusive

3    Emergency Department coverage for the guarded patients of the

4    CPHCS 24 hours per day, seven days a week.

5

6    We understand that this new process for ensuring Emergency

7    Department call coverage may affect some of our medical staff

8    members who have supported this unique patient care service at

9    Mercy Hospitals.  We also recognize that many of the specialty

10   providers may want to continue to serve the CPHCS guarded patients.

11   Please be assured that this new coverage agreement will not impact

12   the clinical privileges of any Medical Staff members.  We will do our

13   very best to serve both the physicians and their patients."

14        21.    On information and belief, COLONIAL alleges that on or about April

15   28, 2009, Defendant MERCY HOSPITAL entered into an exclusive contract with

16   GEMCARE, an Exclusive Coverage Services Agreement, by which GEMCARE,

17   to the exclusion of COLONIAL and any other providers, is to be the exclusive

18   provider of medical services to CDCR inmates admitted to MERCY HOSPITAL

19   through the Emergency Room.

20        22.    On information and belief, COLONIAL alleges that by reason of the

21   Exclusive Coverage Services Agreement, Defendant MERCY HOSPITAL refers

22   CDCR patients to Defendant GEMCARE and Defendant GEMCARE promises to

23   use Defendant MERCY HOSPITAL's facilities, including a promise to utilize

24   MERCY HOSPITAL's outpatient facilities.  Under this contract, Defendant

25   GEMCARE is paid by the State of California for treating the patients referred to it

26   by Defendant MERCY HOSPITAL and Defendant MERCY HOSPITAL is paid

27   by the State of California for CDCR inmates and by others for other patients for

28   the referred use of its facilities for the services it renders to the patients referred by

1    Defendant GEMCARE, all pursuant to and in consideration for Defendant

2    MERCY HOSPITAL's new "ON CALL" protocol and the Exclusive Coverage

3    Services Agreement.

4         23.    But for the Exclusive Coverage Services Agreement, negotiated by

5    Defendant MANAGED CARE for the benefit of Defendant GEMCARE and by

6    Judd for the benefit of Defendant MERCY HOSPITAL, and the modified "ON

7    CALL" protocol, Defendant GEMCARE would not receive the referrals for

8    physician medical services, including physician outpatient services, and Defendant

9    MERCY HOSPITAL would not receive the referral of hospital services, including

10   outpatient services, all in violation of California's Anti-Kickback Statutes.

11        24.    Defendant MERCY HOSPITAL is the only HOSPITAL in the

12   Central California area which has a program which provides medical services to

13   inmates who are admitted to the hospital for treatment at a secured, guarded

14   facility.  No other hospital in the Central California area allows for or has the

15   facilities to accommodate inmates as patients or outpatient inmates with a security

16   section in a hospital setting outside the prison facility.  Under MERCY

17   HOSPITAL's contract and practice with CDCR, MERCY HOSPITAL may refer

18   inmate patients with medical issues relating to the heart to its sister hospital,

19   Memorial Hospital, which provides specialized heart care.  On information and

20   belief, COLONIAL alleges that the Exclusive Coverage Services Agreement and

21   modified "ON CALL" protocol applies as well to CDCR patients who are

22   MERCY HOSPITAL patients who use Memorial Hospital's facilities.

23        25.    Plaintiff COLONIAL cannot provide medical services to prison

24   inmates at MERCY HOSPITAL admitted through the Emergency Room or any

25   other hospital in the Central California area.  No other hospital in the Central

26   California area has a guarded facility as does MERCY HOSPITAL. COLONIAL

27   cannot fulfill its understanding with CDCR to use MERCY HOSPITAL.  CDCR

28

SILVER & FIELD
310) 477-7640

**COMPLAINT**

1   cannot have the cost benefit savings with use of facilities other than MERCY

2   HOSPITAL as no other facility has guarded units.

3       26.   On or about April 30, 2009, Robert J. Severs ("Severs"), on behalf of

4   Defendant GEMCARE and Defendant MANAGED CARE, wrote to physicians

5   who are contracted with Plaintiff COLONIAL.  Exhibit "B" to this Complaint is a

6   true copy of the Severs letter.  The Severs' letter encourages physicians who have

7   contracts with COLONIAL to seek contracts with GEMCARE, suggesting that the

8   physician contracts with COLONIAL are worthless as COLONIAL no longer can

9   admit CDCR patients to Defendant MERCY HOSPITAL.

10       27.   On May 1, 2009, Defendant MERCY HOSPITAL issued three

11   Bulletins regarding admission of inmates to Defendant MERCY HOSPITAL.

12   These three directives are attached to this Complaint as Exhibits "C", "D", and

13   "E".

14       28.   The directive in these memos made it clear that the Emergency Room

15   personnel at Defendant MERCY HOSPITAL were to call Defendant GEMCARE

16   physicians to provide care to inmates to the exclusion of COLONIAL physicians.

17       29.   On and after May 1, 2009, and while Defendants MERCY

18   HOSPITAL, GEMCARE, and MANAGED CARE commenced implementation of

19   the new "ON CALL" protocol and new Exclusive Coverage Services Agreement,

20   inmate patients assigned to COLONIAL by CDCR have been diverted by MERCY

21   HOSPITAL to physicians associated with GEMCARE.  As the implementation of

22   the new "ON CALL" protocol and the Exclusive Coverage Services Agreement

23   are being implemented, the diversion of COLONIAL inmate patients to Defendant

24   GEMCARE is increasing.

25       30.   But for the exclusive contract between defendants GEMCARE and

26   MERCY HOSPITAL, plaintiff COLONIAL would be in direct and substantial

27   competition with defendant GEMCARE, as an entity, and its physician members,

28   as individuals, in the business of providing medical services for inmates at

1    MERCY HOSPITAL.  The exclusive contract between defendants GEMCARE

2    and MERCY HOSPITAL precludes doctors associated with and in contract with

3    COLONIAL from providing medical services to inmates, and insulates

4    GEMCARE and its associated physicians from competition for providing medical

5    services to inmates who are admitted to MERCY HOSPITAL for care treatment

6    through the Emergency Room.

7        31.    The providing of medical services for inmates in the Central

8    California area only at MERCY HOSPITAL, offered exclusively through

9    defendant GEMCARE in the Central California area, involves and directly affects

10   interstate commerce in that:

11            a.    MERCY HOSPITAL provides medical care for individuals

12   who are not from California, and who originate from areas outside of California

13   and the United States;

14            b.    COLONIAL, MERCY HOSPITAL, and GEMCARE purchase

15   medical services, medical equipment, medical supplies, medical materials and

16   medical malpractice insurance from entities located outside the State of California,

17   and as such funds cross California state boundary lines;

18            c.    The doctors at MERCY HOSPITAL, COLONIAL, and

19   GEMCARE, in the conduct of their business, purchase non-medical supplies,

20   materials, and service from entities located outside the State of California, and as

21   such funds cross California state boundary lines;

22            d.    Plaintiff COLONIAL secures treatment for inmates by

23   contracting with out-of–state treatment providers, and as such funds cross

24   California state boundary lines; and

25            e.    The prescription drugs administered to inmate patients for

26   various kinds of medical treatment originate, in material part, outside of California

27   and are shipped to MERCY HOSPITAL across state lines, and as such funds cross

28   California state boundary lines;

32.     The antitrust violations alleged herein directly involve interstate commerce and substantially and adversely affect interstate commerce and, unless restrained, will continue to have the effect of suppressing, eliminating and interfering with competition for the provision of medical services for CDCR inmate patients, the medical treatment of whom directly involves and affects interstate commerce.

## COUNT ONE

### (ANTITRUST UNDER THE SHERMAN ACT AGAINST DEFENDANTS MERCY HOSPITAL, GEMCARE, AND MANAGED CARE)

33.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 32 as though fully set forth at this place.

34.     The modification of the "ON CALL" protocol and the Exclusive Coverage Services Agreement between defendants GEMCARE and MERCY HOSPITAL each constitutes a contract in an unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and defendant GEMCARE has been monopolized, and engaged in an attempt to, monopolize the provision of hospital medical services for inmates in the Central California area in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

35.     The modification of the "ON CALL" protocol and the Exclusive Coverage Services Agreement violates Section 1 of the Sherman and is an integral part of the violation by GEMCARE of Section 2 of the Sherman Act.  It constitutes a non-price vertical restraint and violates the Rule of Reason.

36.     Plaintiff COLONIAL will no longer be able to provide medical services to inmates at MERCY HOSPITAL admitted through the Emergency Room once the modified "ON CALL" protocol and the Exclusive Coverage Services Agreement are fully implemented.

SILVER & FIELD
310) 477-7640

12

COMPLAINT

37.    The exclusive dealing contract and the modification of the "ON CALL" protocol between Defendant MERCY HOSPITAL and Defendant GEMCARE are a substantial barrier to the entry of new providers into the relevant market product and geographic market and serves to insulate Defendant GEMCARE from any competition in the provision of medical care to inpatient inmates in the relevant market.

**A.    Relevant Markets.**

38.    The relevant product market is the provision of inpatient medical services and treatment by medical doctors for inmates of the California state prison system.

39.    Because there is a cluster of state prisons in Central California which account for about 40% of all California inmates requiring medical attention and because these prisoners can be transported only a limited distance from the prison in which they are housed, that area constitutes an effective area of competition for the provision of impatient service to California inmates and is, accordingly, the appropriate geographic market in which to examine the anticompetitive effects of the MERCY HOSPITAL/GEMCARE exclusive dealing arrangement and modified "ON CALL" protocol.  By contractual arrangement with the CDCR, these prisons send inmates to MERCY HOSPITAL for medical treatment.  No other hospital is authorized, or has the facilities, to accept inmates into its hospital system with the same level of security afforded by Defendant MERCY HOSPITAL.

**B.    Effect Of Violations.**

40.    The aforesaid conduct of defendants has produced and, unless restrained, will continue to produce the following anticompetitive effects, among others:

a.   competition in the provision of medical services and treatment for inmates has been unreasonably restricted and eliminated;

b.   The prison system of CDCR is being deprived of the benefit of its contract with plaintiff, as plaintiff now is precluded from performing its obligations at Defendant MERCY HOSPITAL;

c.   inmate patients are being deprived of plaintiff's services at MERCY HOSPITAL;

d.   plaintiff is being deprived of the right to offer inmate patients in the Central California area medical services and treatment in a secure hospital facility.

## C.   **Injury To Plaintiff.**

41.   As a direct and proximate result of the violations alleged herein, plaintiff is being, and will continue to be, immediately and irreparably injured in its business and property by defendants' continuing violations.  Plaintiff has no adequate remedy at law to compensate for such injury, and unless defendants are restrained by an appropriate order of this Court, plaintiff will continue to suffer an inability to compete fully and fairly in the market, loss of revenues, and loss of substantial goodwill and reputation normally attached to the practice of medicine.

42.   As a direct and proximate result of the violations alleged herein and as intended by defendants, Plaintiff COLONIAL has sustained injury to its business and property, as follows:

(a)   It has incurred substantial expenses it would not have otherwise incurred;

(b)   it has lost revenues it would have otherwise earned;

(c)   it has lost profits it would otherwise have made; and

(d)   it has lost substantial goodwill and suffered a diminution of its regional reputation.

43.     Plaintiff cannot now measure these damages with specificity.  When plaintiff has sufficient information to permit it to allege with specificity the quantum of its damages, plaintiff will ask leave of the Court to amend its Complaint to insert said sum herein.

## COUNT TWO
### (VIOLATION OF THE CARTWRIGHT ACT AGAINST DEFENDANTS MERCY HOSPITAL AND GEMCARE)

44.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 32 and paragraphs 34 through 43 as though fully set forth at this place.

45.     Count Two of this Complaint is based on the doctrine of supplemental jurisdiction because the claim asserted herein is ancillary to the federal antitrust claim set out in Count One above and arises from the same transactions and from a common nucleus of operative facts.

46.     Count Two of this Complaint is a claim filed against defendants pursuant to Bus. & Prof. Code Section 16720, et. seq. under the Cartwright Act, which sets forth the antitrust laws of the State of California.

## COUNT THREE
### (VIOLATION OF CALIFORNIA ANTI-KICKBACK STATUTE AGAINST DEFENDANTS MERCY HOSPITAL, GEMCARE, AND MANAGED CARE)

47.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 32  as though fully set forth at this place.

48.     Count Three of this Complaint is based on the doctrine or supplemental jurisdiction because the claim asserted herein is ancillary to the federal antitrust claim set out in Count One above and arises from the same transactions and from a common nucleus of operative facts.

49.     The modification of the "ON CALL" protocol and the Exclusive Coverage Services Agreement violate the California anti-kickback statute, Business and Professions Code §§ 650.01 and 650.02 in that it provides a prohibited referral by Defendant MERCY HOSPITAL to Defendant GEMCARE and a prohibited referral by Defendant GEMCARE to Defendant MERCY HOSPITAL.

50.     As a direct and proximate result of the violations alleged herein and as intended by defendants, Plaintiff COLONIAL has sustained injury to its business and property, as follows:

(a)     It has incurred substantial expenses it would not have otherwise incurred;

(b)     it has lost revenues it would have otherwise earned;

(c)     it has lost profits it would otherwise have made; and

(d)     it has lost substantial goodwill and suffered a diminution of its regional reputation.

## COUNT FOUR

### (UNFAIR COMPETITION UNDER THE CALIFORNIA BUSINESS AND PROFESSIONS CODE AGAINST DEFENDANTS MERCY HOSPITAL, GEMCARE, AND MANAGED CARE)

51.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 32  as though fully set forth at this place.

52.     Count Four of this Complaint is based on the doctrine of supplemental jurisdiction because the claim asserted herein is ancillary to the federal antitrust claims set out in Count One and Count Three above and arises from the same transactions and from a common nucleus of operative facts.

53.    Count Four of this Complaint is a claim filed against Defendants MERCY HOSPITAL and GEMCARE pursuant to Business and Professions Code Sections 17200, <u>et</u>. <u>seq</u>. of the California Unfair Competition Act.

54.    Defendants GEMCARE and MANAGED CARE willfully and in conscious disregard of the plaintiff's rights and with the purpose of unfairly diverting trade from plaintiff, has urged Defendant MERCY HOSPITAL to modify its "ON CALL" protocol in violation of Plaintiff COLONIAL's property interests.

55.    Defendant GEMCARE willfully and in conscious disregard of the plaintiff's rights and with the purpose of unfairly diverting trade from plaintiff, has entered into an illegal contract with GEMCARE to provide medical services and treatment for inmates admitted to MERCY HOSPITAL.

56.    The illegal modification of the "ON CALL" protocol and illegal Exclusive Coverage Services Agreement prevents plaintiff COLONIAL from competing with defendant GEMCARE and essentially precludes plaintiff from providing medical services to inmates in the Central California area in a security appropriate environment.

57.    On information and belief, Plaintiff COLONIAL alleges that as a result of the modification of the "ON CALL" protocol and having entered into the Exclusive Coverage Services Agreement Defendant GEMCARE and Defendant MERCY HOSPITAL are in breach of their agreements with the CDCR.

58.    As a direct and proximate result of the conduct of Defendant GEMCARE's and Defendant MERCY HOSPITAL's unfair competition, Plaintiff COLONIAL has been injured in its business and property as set forth in this Complaint.  Plaintiff COLONIAL seeks to enjoin Defendant MERCY HOSPITAL's and Defendant GEMCARE's unlawful and unfair conduct.

1

2

3

4

5

## COUNT FIVE

## (TORTIOUS INTERFERENCE WITH CONTRACTS
## AND  PROSPECTIVE ECONOMIC ADVANTAGES
## AGAINST DEFENDANTS MERCY HOSPITAL,
## GEMCARE, AND MANAGED CARE)

6      59.    Plaintiff hereby incorporates the allegations contained in paragraphs 1

7    through 32 as though fully set forth at this place.

8      60.    Count Five of this Complaint is based on the doctrine of supplemental

9    jurisdiction because the claim asserted herein is ancillary to the federal antitrust

10   claim set out in Count One above and arises from the same transactions and from a

11   common nucleus of operative facts.

12     61.    Plaintiff COLONIAL has had, during the period of time covered by

13   this Complaint, and now has, a reasonable valuable expectation of existing and

14   prospective business relationships based on its prior contractual relationship with

15   CDCR and based on its reputation in the medical community.  Defendants

16   MERCY HOSPITAL, GEMCARE, and MANAGED CARE  were aware of the

17   existence of those existing and prospective relationships and COLONIAL'S

18   contract with CDCR.  During the time period of the wrongful interference by

19   Defendants GEMCARE, MANAGED CARE, and MERCY HOSPITAL,

20   COLONIAL had and continues to have a contract with CDCR to provide medical

21   services for inmates admitted to MERCY HOSPITAL for medical treatment.

22     62.    Plaintiff COLONIAL has had, during the period of time covered by

23   this Complaint, and now has, a reasonable valuable expectation of existing and

24   prospective business relationships based on its prior contractual relationships with

25   physicians who contract with it to provide medical services, through COLONIAL,

26   to CDCR's inmates and based on its reputation in the medical community.

27   Defendants MERCY HOSPITAL, GEMCARE, and MANAGED CARE were

28   aware of the existence of those existing and prospective relationships and

1    COLONIAL'S contracts with the physician providers.  During the time period of

2    the wrongful interference by Defendants GEMCARE, MANAGED CARE, and

3    MERCY HOSPITAL, COLONIAL had and continues to have contracts with

4    physician providers to provide medical services for CDCR's inmates.

5        63.    Defendants MERCY HOSPITAL, GEMCARE, and MANAGED

6    CARE have intentionally disrupted and interfered with plaintiff's existing and

7    prospective business relationships and plaintiff COLONIAL's contract with

8    CDCR and COLONIAL's contracts with physician providers.

9        64.    As a proximate result of that conduct, plaintiff has been prevented

10   from consummating prospective business transactions with CDCR and physician

11   providers which would have yielded substantial revenue and profit and has been

12   prevented from treating inmates.

13       65.    Through Defendants MERCY HOSPITAL, GEMCARE, and

14   MANAGED CARE's intentional disruption of plaintiff's existing and prospective

15   business relationship and existing contract with CDCR and contracts with

16   physician providers, Defendants MERCY HOSPITAL, GEMCARE, and

17   MANAGED CARE have been guilty of oppression, fraud, malice and despicable

18   conduct, and, by reason thereof, plaintiff and the State of California are entitled to

19   exemplary damages.

20

21       WHEREAS, Plaintiff demands judgment against defendants as follows:

22       1.    On Count One against Defendants MERCY HOSPITAL and

23   GEMCARE for treble damages, costs and a reasonable attorneys' fee, plus

24   injunctive relief, for the violations by defendants of the federal antitrust laws;

25       2.    On Count Two against Defendants MERCY HOSPITAL and

26   GEMCARE for treble damages, costs and reasonable attorneys' fees, plus

27   injunctive relief, for violations by defendants of California State antitrust laws;

28

SILVER & FIELD
310) 477-7640

19                    **COMPLAINT**

3.    On Count Three for injunctive relief against Defendants MERCY HOSPITAL and GEMCARE for their violation of California's Anti-Kickback statute, Business and Professions Code §§ 650.01 and 650.02;

4.    On Count Four for injunctive relief against Defendants MERCY HOSPITAL and GEMCARE for their violation of the California Business and Professions Code §17200, et. seq.;

5.    On Count Five for compensatory and exemplary damages for Defendant MERCY HOSPITAL's, Defendant GEMCARE's, and Defendant MANAGED CARE's tortious interference with plaintiff's contracts and with its existing and prospective economic advantages; and

6.    For costs and such other and further relief as may be just and proper.

DATED:    May 18, 2009

SILVER & FIELD
LAWRENCE SILVER

By: _____
Lawrence Silver
Attorneys for Plaintiff COLONIAL
MEDICAL GROUP, INC.

DATED:    May 18, 2009

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
RALPH C. HOFER

By: _____
Maxwell M. Blecher
Attorneys for Plaintiff COLONIAL
MEDICAL GROUP, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C., Rule 38) an Local Rule 38.1).

DATED:        May 18, 2009                              SILVER & FIELD
                                                        LAWRENCE SILVER


By:  _____
                                                        Lawrence Silver
                                                        Attorneys for Plaintiff COLONIAL
                                                        MEDICAL GROUP, INC.

DATE:        May 18, 2009                               BLECHER & COLLINS, P.C.
                                                        MAXWELL M. BLECHER
                                                        RALPH C. HOFER


By:  _____
                                                        Maxwell M. Blecher
                                                        Attorneys for Plaintiff COLONIAL
                                                        MEDICAL GROUP, INC.

**EXHIBIT A**



## Mercy Hospitals of Bakersfield

A member of CHW

April 28, 2009

Dear Dr.

Effective May 1, 2009, the California Department of Corrections and Rehabilitation (CDCR) has contracted with an additional medical group to care for the guarded patients of the California Prison Health Care System (CPHCS). There are now three major physician groups in this region with contracts to provide inpatient and outpatient specialty care to guarded patients. Many of the physicians in each of these groups are members of Mercy Hospital's Medical Staff with privileges to admit and/or treat guarded patients of the CPHCS.

As a result of these changes at CDCR, the Mercy Hospital Board, in consultation with the Medical Executive Committee, has approved Mercy Hospital entering into an exclusive Coverage Services Agreement with Golden Empire Managed Care, Inc., A Medical Group to ensure adequate coverage of the Emergency Departments and continuous availability of inpatient services for CPHCS patients. Under this arrangement, Golden Empire will provide exclusive Emergency Department coverage for the guarded patients of the CPHCS 24 hours per day, seven days a week.

We understand that this new process for ensuring Emergency Department call coverage may affect some of our medical staff members who have supported this unique patient care service at Mercy Hospitals. We also recognize that many of the specialty providers may want to continue to serve the CPHCS guarded patients. Please be assured that this new coverage agreement will not impact the clinical privileges of any Medical Staff members. We will do our very best to serve both the physicians and their patients.

Please do not hesitate to contact Mr. Gerald Starr, Vice President CDCR Network or any member of the Executive Team with any questions or suggestions to improve our services.

Kind regards,

Russell V. Judd
President and CEO
Mercy Hospitals of Bakersfield

RVJ:ch

| Truxtun Campus | Southwest Campus |
| --- | --- |
| 2215 Truxtun Avenue | 400 Old River Road |
| Bakersfield, CA 93301 | Bakersfield, CA 93311 |
| 661.632.5000 | 661.663.6000 |

EXHIBIT "A"

**EXHIBIT B**



**MANAGED CARE SYSTEMS, LP**

4550 California Ave., Suite 500 ▲ Bakersfield, CA 93309 ▲ 661.716.7100, Fax 661.716.7113 ▲ managedcaresystems.com

April 20, 2009

KERN GASTROENTEROLOGY MEDICAL GROUP
5959 TRUXTUN AVE, STE 200
BAKERSFIELD, CA 93309
Attn: Toni Poe, Office Manager

Dear Toni:

Effective May 1, 2009, GEMCare Medical Group has entered into an agreement with the State of California, Prison Health Care Services (CPHCS), to provide health care services to inmates.

GEMCare will be coordinating with Mercy Hospitals Bakersfield and San Joaquin Valley Pulmonary Medical Group to manage specialty services. GEMCare will be using the outpatient Medical Guarded Unit on the Mercy Truxtun campus to the extent possible.

Reimbursement will be at 125% of current Medicare with no withholds, as indicated in the enclosed Amendment. Claims filing requirements and other claims payment information will be included in follow up information on the CPHCS program.

We view this as an opportunity to bring high quality and cost effective care to the CPHCS program through an integrated medical group arrangement in conjunction with Mercy Hospitals Bakersfield.

This program will be voluntary. If interested in participating, please sign the enclosed amendment and fax back to 661-716-9225 within 10 days of receipt. Steve Linesch is available at 716-7124 or slinesch@managedcaresystems.com to answer any questions you may have or to provide additional information.

Thank you for your interest in the new CPHCS program and for your continuing support of GEMCare Medical Group.

Sincerely,

Robert J. Severs
CEO, Managed Care Systems

Cc:     Vincent Phillips MD President, GEMCare Medical Group
        Stephen J. Linesch, Director Contracting/Administration, Managed Care Systems

EXHIBIT "**B**"

**EXHIBIT C**

# CDCR/CPHCS
# NON EMERGENCY TRANSPORT
## *To Mercy or Memorial Hospital in Bakersfield*

The clinical assessment and the decision to transport a non emergent guarded patient (GP) to the Emergency Department of Mercy or Memorial Hospital is the responsibility of the highest level Clinical Staff member on duty at the CDCR Facility's CPHCS Health Unit.

Non emergency transport does not need to be delayed to obtain the approval of a Primary Care or Emergency Department (ED) physician.

At the earliest possible time the CPHCS referring clinician should contact the ED physician/staff with the clinical information regarding the patient's condition and the estimated time of arrival of the patient.

Following the arrival and assessment of the patient the ED physician will:

1) Contact the coverage group physician on call with the recommendation that the patient should be admitted; or,

2) If the GP is to be assessed, treated and returned to the referring facility; the ED physician will communicate to the referring CPHCS clinical staff member with a written assessment of the patient clinical presentation and recommendations, if any, for continuing observation or treatment.

---

### EFFECTIVE FRIDAY, MAY 1, 2009

---

# CONTACT NUMBER

## 661-632-5CDC (5232)



### Mercy Hospitals of Bakersfield
A member of CHW



**EXHIBIT D**

# CDCR/CPHCS
# EMERGENCY TRANSPORT
## *To Mercy or Memorial Hospital in Bakersfield*

The clinical assessment and the decision to designate a guarded patient (GP) as a Code 3 transport is the responsibility of the highest level Clinical Staff member on duty at the CDCR Facility's CPHCS Health Unit.

The GP Code 3 transport does not need to be delayed to obtain the approval of a Primary Care or Emergency Department (ED) physician.

At the earliest possible time the CPHCS referring clinician should contact the ED physician/staff with the clinical information regarding the patient's condition and the estimated time of arrival of the patient.

Following the arrival and assessment of the patient the ED physician will:

1) Contact the coverage group physician on call with the recommendation that the patient should be admitted; or,

2) If the GP is to be assessed, treated and returned to the referring facility; the ED physician will communicate to the referring CPHCS clinical staff member with a written assessment of the patient clinical presentation and recommendations, if any, for continuing observation or treatment.

---

### EFFECTIVE FRIDAY, MAY 1, 2009

# CONTACT NUMBER

# 661-632-5CDC (5232)



### Mercy Hospitals of Bakersfield
A member of CHW

EXHIBIT "D"

EXHIBIT E

# CDCR/CPHCS
# EMERGENCY TRANSPORT
*To Mercy or Memorial Hospital in Bakersfield*

Guarded Patient Code 3 transport does not need
to be delayed to obtain the approval of a Primary
Care or Emergency Department (ED) physician.

EFFECTIVE FRIDAY, MAY 1, 2009

# CONTACT NUMBER
## 661-632-5CDC (5232)



Mercy Hospitals of Bakersfield
A member of CHW

EXHIBIT "E"

000026