IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONIAL MEDICAL GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CATHOLIC HEALTHCARE WEST, a California Not-For-Profit Corporation dba MERCY HOSPITAL; GOLDEN EMPIRE MANAGEMENT CARE, A MEDICAL GROUP, INC., a California Corporation; and MANAGED CARE SYSTEMS, LP,<br><br>Defendants | No. C-09-2192 MMC<br><br>**ORDER GRANTING IN PART AND DEFERRING IN PART RULING ON DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM; CONTINUING CASE MANAGEMENT CONFERENCE; VACATING HEARING** |

Before the Court are two motions: (1) defendant Catholic Healthcare West dba Mercy Hospital's ("Mercy Hospital") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed July 31, 2009; and (2) defendant Golden Empire Management Care, A Medical Group, Inc. and defendant Managed Care Systems, LP's (collectively "GEMCare") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed July 31, 2009. Plaintiff Colonial Medical Group ("Colonial") has filed a single opposition, to which Mercy Hospital and GEMCare have separately replied. Having read and considered the papers filed in support of and in opposition to the motions, the Court hereby deems the matters suitable for decision on the parties' respective submissions, VACATES the hearing

scheduled for October 2, 2009, and rules as follows.

**BACKGROUND**

In its complaint, Colonial alleges it has a "non-exclusive contract" with the California Department of Corrections and Rehabilitation ("CDCR"), under which Colonial provides "medical services to individuals who are inmates in the California state prisons in Central California." (See Compl. ¶ 9.) Colonial alleges that GEMCare has a "non-exclusive contract with CDCR to provide physician health services to inmates held by CDCR." (See Compl. ¶ 15.)

Colonial alleges that Mercy Hospital, located in Bakersfield, California, "has a 29 bed guarded unit and other guarded facilities, which other hospitals in the area do not" (see Compl. ¶ 9), and that the CDCR has a "hospital services contract" with Mercy Hospital (see Compl. ¶ 10.) At the time Colonial entered into its contract with CDCR, Colonial alleges, it was "understood that Mercy Hospital was the only hospital that Colonial would use for CDCR inmates." (See Compl. ¶ 9.)[1]

Colonial further alleges that, prior to May 1, 2009, whenever the CDCR determined an inmate needed medical care at a hospital and further determined Colonial should provide that care, the CDCR would transport the inmate to Mercy Hospital, where the inmate would be evaluated by an "Emergency Room physician"; if the Emergency Room physician determined the inmate should be admitted, a Colonial physician admitted the inmate to Mercy Hospital and thereafter provided care to the inmate. (See Compl. ¶ 10.)

Colonial alleges that on or about April 28, 2009, Mercy Hospital entered into an "exclusive contract" with GEMCare, under which agreement GEMCare is "the exclusive provider of medical services to CDCR inmates admitted to Mercy Hospital through the Emergency Room." (See Compl. ¶ 21.) According to Colonial, beginning on May 1, 2009

---

[1]Additionally, Colonial alleges that the CDCR, in connection with "the latest proposed contract between the parties," has "requested a term that Colonial admit CDCR patients only to Mercy Hospital." (See id.) The complaint does not allege what action, if any, Colonial has taken in response to the CDCR's request.

2

1  and continuing to the present, "inmate patients assigned to Colonial by CDCR have been
2  diverted by Mercy Hospital to physicians associated with GEMCare." (See Compl. ¶ 29.)
3  In light of said "diversion," Colonial alleges, "Colonial cannot provide medical services to
4  prison inmates at Mercy Hospital" and thus "cannot fulfill its understanding with CDCR to
5  use Mercy Hospital." (See Compl. ¶ 25.)[2]

6  Based on the above allegations, Colonial alleges five counts, one of which arises
7  under federal law and the remainder alleging violations of state law.

## LEGAL STANDARD

9  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory
10 or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v.
11 Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2) of the Federal Rules
12 of Civil Procedure requires "a short and plain statement of the claim showing that the
13 pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8
14 announces does not require 'detailed factual allegations,' but it demands more than an
15 unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct.
16 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

17 In analyzing a motion to dismiss, a district court must accept as true all material
18 allegations in the complaint, and construe them in the light most favorable to the
19 nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).
20 "To survive a motion to dismiss, a complaint must contain sufficient factual material,
21 accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at
22 1949 (quoting Twombly, 550 U.S. at 570). Courts "are not bound to accept as true a legal
23 conclusion couched as a factual allegation." See Iqbal, 129 S.Ct. at 1950 (quoting
24 Twombly, 550 U.S. at 55).
25 //

---

[2] The complaint does not allege whether the CDCR has taken any action in light of such "diversion," or is even aware of it.

**DISCUSSION**

In their respective motions, defendants argue each of the five counts alleged in the complaint is subject to dismissal for failure to state a claim.

**A. Count One ("Antitrust Under the Sherman Act")**

In Count One, Colonial alleges violations of §§ 1 and 2 of the Sherman Act. Defendants argue the Sherman Act claims are subject to dismissal for failure to sufficiently allege a product market.

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'" Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1045 (9th Cir. 2008). This requirement applies to both § 1 and § 2 of the Sherman Act, see id. at 1044 n.3. A complaint is subject to dismissal "if the complaint's 'relevant market' definition is facially unsustainable." See id. at 1045.

"Antitrust law requires allegation of both a product market and a geographic market." Id. at 1045 n.4. "For antitrust purposes, defining the product market involves identification of the field of competition: the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir. 1989). "[A] product market is typically defined to include the pool of goods or services that qualify as economic substitutes because they enjoy reasonable interchangeability of use and cross-elasticity of demand." Id. "The consumers do not define the boundaries of the market; the products or producers do." Newcal Indus., 513 F.3d at 1045.

Here, Colonial alleges the "product market" is "the provision of inpatient medical services and treatment by medical doctors for inmates of the California prison system." (See Compl. ¶ 38.) In other words, Colonial defines the product market by services purchased by one consumer, specifically, the CDCR. As discussed above, however, "consumers do not define the boundaries of the market." See Newcal Indus., 513 F.3d at 1045. Consequently, a product market cannot be defined by sales to a single consumer.

4

See, e.g., Smalley & Co. v. Emerson & Cuming, Inc., 13 F.3d 366, 368 (10th Cir. 1993) (holding antitrust plaintiff's "definition of the relevant product market [was] fatal," where plaintiff defined product market as sales of product "to a single customer"; stating "[o]ther consumers must be accommodated in determining the relevant product market").[3]

In its opposition, Colonial asserts "inmate care is a separate and distinct submarket because of the specific procedures followed and the heightened security requirements for treating inmates." (See Pl.'s Opp. at 8.) Assuming, arguendo, a custodial agency's security needs could support a finding that "inmate care" constitutes a "submarket" within a larger market for medical services, Colonial has not defined the relevant product market as medical services provided to incarcerated persons in secure facilities; rather, as discussed above, Colonial has defined the product market solely by reference to a specified custodial agency.[4]

Accordingly, Count One is subject to dismissal for failure to allege a cognizable product market.[5]

---

[3]Colonial incorrectly asserts the Seventh Circuit, in MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc., 62 F.3d 967 (7th Cir. 1995), held an antitrust plaintiff had sufficiently alleged a product market defined as services provided to a "single customer." (See Pl.'s Opp. at 7:27 - 2.) In MCM Partners, the plaintiff alleged the product market was "the market for the rental of forklifts and other material handling and personnel moving equipment at McCormick Place," a convention hall, see MCM Partners, 62 F.3d at 975, i.e., a product market defined by products available for rent at a specified location, not a product market defined by products available for rent by one specified customer at that location. Indeed, as the Seventh Circuit noted, the consumers in the alleged product market were the "exhibition contractors who set up, install, and disassemble the booths and other physical items," see id., not one particular exhibition contractor.

[4]If a product market exists for "inmate care" provided in secure facilities, it is likely entities other than the CDCR would be consumers in such market as well, for example, entities managing federal prisons and county jails. Further, various government entities that civilly detain persons, such as persons held for observation under § 5150 of the California Welfare and Institutions Code or aliens held pending removal proceedings, would be consumers within a market for the provision of medical care in secure facilities.

[5]Defendants also argue Colonial has failed to sufficiently identify the geographic area in which competitors in the product market compete, and has failed to allege facts to support a finding that any harm to competition in the relevant market has occurred. Additionally, GEMCare argues that the complaint fails to sufficiently allege Gemcare has a monopoly in the product market. In light of the Court's finding as to Colonial's failure to allege a cognizable product market, the Court does not reach these additional arguments.

1  **B. Count Two ("Violation of the Cartwright Act")**

2     In Count Two, Colonial alleges a violation of California's Cartwright Act. Such claim
3 is based entirely on the conduct on which Colonial bases its Sherman Act claims. (See
4 Compl. ¶¶ 44-46.)

5     "The analysis under California's antitrust law mirrors the analysis under federal law
6 because the Cartwright Act . . . was modeled after the Sherman Act." County of Tuolumne
7 v. Sonora Community Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001); see also Marin County
8 Board of Realtors, Inc. v. Palsson, 16 Cal.3d 920, 925 (1976) (holding "federal cases
9 interpreting the Sherman Act are applicable to problems arising under the Cartwright Act").

10     Accordingly, for the reasons stated above with respect to Count One, Count Two is
11 subject to dismissal for failure to allege a cognizable product market.

12 **C. Remaining State Law Claims**

13     In Count Three, Colonial alleges defendants have violated §§ 650.01 and 650.02 of
14 the California Business & Professions Code by engaging in "prohibited referral[s]" of
15 medical care. (See Compl. ¶ 49.) In Count Four, Colonial alleges a violation of
16 § 17200 of the California Business & Professions Code, which claim is based on all of the
17 above-described statutory violations. (See Compl. ¶ 51.) In Count Five, Colonial alleges a
18 claim for "tortious interference with contracts and prospective economic advantages."

19     The Court will defer ruling on the sufficiency of Counts Three, Four, and Five,
20 pending amendment, if any, of Colonial's Sherman Act claims. See 28 U.S.C. § 1367(c)(3)
21 (providing where sole cause of action over which district court has original jurisdiction has
22 been dismissed, the court may decline to exercise supplemental jurisdiction over remaining
23 claims).

24 //
25 //
26 //
27 //
28

**CONCLUSION**

For the reasons discussed above, defendants' motions to dismiss are hereby GRANTED in part and DEFERRED in part, as follows:

1. Counts One and Two are hereby DISMISSED, with leave to amend.

2. To the extent the motions seek dismissal of Counts Three, Four, and Five, ruling is hereby DEFERRED.

3. If Colonial elects to file a First Amended Complaint to cure the deficiencies identified above, Colonial shall its First Amended Complaint no later than October 23, 2009.

4. The Case Management Conference is hereby CONTINUED from November 6, 2009 to January 8, 2010.

**IT IS SO ORDERED.**

Dated: September 28, 2009

MAXINE M. CHESNEY
United States District Judge